NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| COSTANTINO CIPOLLA, | Hon. Faith S. Hochberg |
| Plaintiff, | Civil No. 04-2646 (FSH) |
| v. | |
| HMS HOST CORPORATION, | **OPINION** |
| Defendant. | Date: October 20, 2005 |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant's motion for summary judgment. Plaintiff alleges employment discrimination due to his filing for bankruptcy, in violation of (1) § 525(b) of the Bankruptcy Act and (2) New Jersey common law prohibiting employment termination that is contrary to a clear mandate of public policy (in this case, that of § 525). The Court decides the motion on the papers in accordance with Fed. R. Civ. P. 78.

**BACKGROUND**

Plaintiff Costantino Cipolla ("Plaintiff") was first hired by defendant HMS Host Corporation ("Defendant" or "Host") in September 1999 as an assistant manager for two restaurants in New Jersey. Defendant is a food and beverage retail concessionaire that operates concessions under brand names. Plaintiff worked for Defendant for nearly three years and

1

received several promotions until becoming manager of Chili's Restaurant in Times Square, New York City.  He resigned on or about August 30, 2002.

On or about September 1, 2003, Plaintiff recommended working with Defendant for his former supervisor at Chili's, Rick Biglin, who had become the general manager of HMS's Newark Liberty Airport concessions.  Mr. Biglin had been partially responsible for Plaintiff's prior promotions.  The two occasionally socialized outside of work and remained in touch after Plaintiff's resignation in 2002.  Plaintiff wanted to work for Defendant again because of his good working relationship with Mr. Biglin, so Plaintiff quit his job to do so.  Plaintiff underwent training at Newark airport and began his duties as a store manager at one of Mr. Biglin's terminals.

Defendant's Human Resources Manager who oversaw Defendant's Newark Airport facilities was Noelle Voska who was responsible for hiring, maintaining employee files, and handling day to day human resources issues.  She was on a leave of absence when Mr. Biglin offered Plaintiff employment in August 2003.  When she returned in early September 2003, she learned that Plaintiff had already been working without the completion of formal hiring procedures.  She quickly provided Plaintiff with a formal offer letter, backdated to September 1, 2003, and a background check authorization form.  The letter and authorization form both stated that employment was contingent upon successful completion of the background check.

Plaintiff consented to the routine background investigation and was told by Mr. Biglin and Ms. Voska that he did not need to fill out his entire employment application because of his prior experience with Defendant.  Plaintiff received his first paycheck from HMS on September 19, 2003, compensating him for services performed through September 11, 2003.

2

Defendant's background investigation policy, instituted in the summer of 2002, prohibits an employee in a supervisory capacity from commencing employment until the results of a credit check are performed. The checks are done post-offer because Defendant needs the applicant's birth date for the check, but under Defendant's policy the offer is expressly contingent upon successful completion of the check and the applicant is not officially hired until the background check is complete. The employee may only attend a one-day welcome orientation and a one-day computer-based training before the check results are reported. The checks are performed by an outside agency called American Background Information Service ("American Background") which emails results to HMS, in this case to Ms. Voska. The criteria and scoring model was established by American Background, following industry standards, with input and final approval from Defendant. The email results only provide a red (Cannot Hire), yellow (Dept. of Loss Prevention/Human Resources will decide after further review), or green (Okay to Hire) flag based on the scoring model analyzing the candidate's debt payment history.[1]

On or about September 17, 2003, Ms. Voska received an email from American Background indicating that Plaintiff's credit report generated a red flag. Thomas Stein, the Director of Loss Prevention who worked out of corporate headquarters in Maryland, later reviewed the details of Plaintiff's credit report. It indicated late debt payments and a bankruptcy filing dated August 1, 2003. Mr. Stein does not review the results of every background check. He has the authority and discretion to change a red flag to a green flag, and exercises such authority when extenuating or special circumstances may have caused the bad credit. Ms. Voska

---

[1] The credit scoring model that existed at the time of Plaintiff's application provided that two or more accounts past due for 120 days scored a risk factor of 4. Four or more accounts sent to collections scored a risk factor of 3. A total of 7 resulted in a red flag.

does not know the criteria that determine a flag's color, never sees an applicant's underlying credit report, and has no authority to change a flag's color.

On or about the same day, Mr. Biglin informed Plaintiff that his background check produced a red flag. Plaintiff stated that he was taking care of his debt obligations through bankruptcy and offered to provide his bankruptcy documentation as evidence of taking responsibility. He provided the documentation to Mr. Biglin later that day who turned the materials over to Ms. Voska that night. Ms. Voska represented that she would provide the materials to Mr. Stein.[2] Mr. Biglin told Plaintiff not to worry because the matter would be resolved.[3]

Mr. Stein first heard from Ms. Voska regarding Plaintiff's red flag soon after Ms. Voska received the red flag by email. Without knowing whom the candidate was, Mr. Stein indicated that a red flag meant the candidate could not be hired. Later that night, Sam Chandler, director of recruiting, called Mr. Stein regarding the red flag. Mr. Stein then reviewed Plaintiff's credit report for the first time. It showed that Plaintiff had four accounts 120 days past due and four accounts that were sent to collection, which exceeds the condition necessary to automatically generate a red flag. It also showed that Plaintiff had filed for bankruptcy. The next day, Ms. Voska's supervisor, Valerie Kane-Curtis, contacted Mr. Stein to see if Plaintiff's flag could be changed to green, but Mr. Stein insisted it remain red. Ms. Kane-Curtis also contacted Senior Vice President Essi Pourhadi to see if he could influence the flag's color, but Mr. Pourhadi said he could not.

---

[2] Mr. Stein denies having received the materials.

[3] The parties are in dispute about whether Ms. Voska also made such representation to Plaintiff. This disputed fact is not material.

Mr. Stein testified in deposition that he made the decision to leave Plaintiff's flag red because he saw nothing that warranted changing it. Mr. Stein stated that he considered that Plaintiff had filed for bankruptcy as evidence that he was attempting to deal with his debts, but he did not take the bankruptcy into consideration regarding changing the flag's color because it is not a part of the scoring criteria.

In 2003, the year Plaintiff was terminated, Defendant had 85 applicants who received red flags and none were hired by Defendant. 23 of the applicants had bankruptcy indicated on their credit report, and 62 did not.[4]

Within one week of the return of Plaintiff's red flag, Ms. Voska terminated Plaintiff from his position. Plaintiff later received a letter confirming his termination, citing his credit history as the reason.

**STANDARD OF REVIEW**

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[4] The record shows only one instance two years after Plaintiff was terminated where Mr. Stein reversed an applicant's red flag. That applicant had initially received a red flag on his background check because his credit report showed (a) six student loans being 90 days past due, (b) three credit cards where payment was only made after they went into collections, and (c) a State Farm installment account being 60 days past due; the report did not show a bankruptcy filing. Mr. Stein stated that he made the reversal because the applicant contested his credit check as incorrect because his student loans should not have been listed as due, and without those student loan "late" payments the applicant had "nearly perfect" credit. Plaintiff in this case was also advised to contact Mr. Stein with any questions and to immediately provide Host with written documentation if Plaintiff believed his credit report was in correct; Plaintiff did not contest the accuracy of his credit report.

242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. This burden can be "discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id*. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex Corp.*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some

metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587 (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

**DISCUSSION**

The Bankruptcy Act prohibits a private employer from terminating a debtor-employee who has filed for bankruptcy, or from discriminating against him in any way with respect to his employment.  11 U.S.C. § 525(b).  A goal of bankruptcy law is to permit honest debtors a "fresh start," which is dependant on the debtor's continued employment.  *Re McNeely*, 82 B.R. 628, 632 (S.D. Ga. 1987).  In order to obtain relief, the Bankruptcy Act requires that any adverse employment action taken against the employee be "solely because" of the employee's bankruptcy.  11 U.S.C. § 525(b).

The parties disagree as to whether or not Plaintiff was truly an employee.  Assuming for purposes of this motion that Plaintiff was an employee,[5] Plaintiff must show that his bankruptcy filing provided the "sole reason" for termination.  *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1268-69 (9th Cir. 1990) (holding that "In order to maintain a cause of action under section 525(b), a plaintiff must show that [his bankruptcy filing] provided the sole reason for termination"); *White v. Kentuckiana Livestock Market, Inc.*, 397

---

[5] It is not necessary to reach this question at this time.

7

F.3d 420, 426 (6th Cir. 2005) (rejecting a liberal interpretation of the words "solely because" and stating that a stricter reading is "sounder"); *Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 21-23 (1st Cir. 1989) (holding that "a fundamental element of a § 525(b) claim is that ... the filing of bankruptcy ... is the sole reason for discriminatory treatment by an employer"); *Everett v. Lake Martin Area United Way*, 46 F.Supp.2d 1233, 1237 (M.D. Ala. 1999) (holding "the term 'solely' as used in the statute means what it says - *i.e.* that a person seeking relief under [§ 525(b)] for a termination must prove that the filing of a bankruptcy was the sole reason for termination"); *Stockhouse v. Hines Motor Supply, Inc.*, 75 B.R. 83, 85 (D.Wyo. 1987); *Sweeney v. Ameritrust Co., N.A.*, 113 B.R. 359, 362-363 (Bankr.N.D. Ohio 1990); *In re Hopkins*, 66 B.R. 828, 831 (Bankr.W.D. Ark. 1986).

Plaintiff produces no direct evidence that Plaintiff's bankruptcy was the sole reason for Mr. Stein's decision. Plaintiff provides neither testimony nor documentation that he was terminated for his bankruptcy and proffers no motive. Plaintiff produces circumstantial evidence, two years after the events at issue here, of a single employee who was not bankrupt and whose red flag was reversed.

Defendant's policy since implementing the background credit check in 2003 has been to deny employment to those whose credit reports generate red flags.[6] In 2003, of 85 conditional employees whose credit checks produced red flags, none was hired by Host and the majority of the applicants (62 of 85) were not bankrupt. Plaintiff does not dispute the accuracy of his credit report nor does he dispute that his report would generate a red flag regardless of his bankruptcy. Plaintiff proffers that Mr. Biglin (and perhaps Ms. Voska) assured him that the red

---

[6] Credit checks are a lawful basis for employers to make employment decisions. *See, e.g., Paxton v. Union National Bank*, 519 F.Supp. 136 (E.D. Ark 1981).

flag would be reversed. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff proffers that these two individuals appreciated Plaintiff's work, wanted Plaintiff to remain in his position, and tried to convince Mr. Stein to reverse the flag's color. However, this evidence, without any evidence that there was any distinction drawn between the non-bankrupt and bankrupt 85 other employees terminated in 2003, is insufficient to lead a reasonable jury to conclude that Mr. Stein refused to reverse the flag's color "solely because" Plaintiff was bankrupt.

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is granted. An appropriate order will issue.


/s/ **Faith S. Hochberg**
_____
Hon. Faith S. Hochberg, U.S.D.J.